# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1764 | **DATE** | August 23, 2001 |
| **CASE TITLE** | Abraham v. North Avenue Auto and Bank One Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motions to dismiss [33-1, 34-1] are denied in part and granted in part. The motions are denied as to Counts V and VI. North Avenue's motion is denied as to Count II. North Avenue's motion to dismiss Count I is denied. Bank One's motion to dismiss Count I, to the extent that Count I is premised on Bank One's purported ratification of the allegedly fraudulent lease (see subparagraph 27(a) of the Second Amended Complaint), is granted. Pursuant to plaintiff's motion to voluntarily dismiss Count IV [ ] is granted. Plaintiff has leave to amend the Second Amended Complaint in accordance with this memorandum opinion. The court's order of June 13, 2001 [39-1] is vacated. ENTER MEMORANDUM OPINION.

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| X | Notices MAILED by judge's staff. | | AUG 2 4 2001 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | ED-7 FILED FOR DOCKETING | | ED FOR DOCKETING | 40 |
| | Mail AO 450 form. | 01 AUG 23 PM 5: 18 | docketing deputy initials | UG 23 PM 5: 18 | |
| | Copy to _____ | | 8/23/01 date mailed notice 01 | | |
| KAM | courtroom deputy's initials | | KAM | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SARKEES ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00 C 1764 |
| | ) | |
| NORTH AVENUE AUTO, INC. and | ) | |
| BANK ONE WISCONSIN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court are defendants' motions to dismiss certain counts of the second amended complaint. For the reasons explained below, the motions are granted in part and denied in part.

## BACKGROUND

Plaintiff Sarkees Abraham alleges that defendant North Avenue Auto, Inc. ("North Avenue") engaged in a fraudulent bait-and-switch transaction with him, in which North Avenue misrepresented to Abraham that he was purchasing a vehicle when in reality, North Avenue arranged a lease on the vehicle by means of forgery. Plaintiff also alleges that defendant Bank One Wisconsin ("Bank One") ratified its agent North Avenue's fraudulent acts after receiving notice of the fraud.

The following facts are drawn from the Second Amended Complaint ("Complaint") and are taken as true for purposes of these

L/0

motions. On March 23, 1999, Abraham went to defendant North Avenue (now known as Grand Honda), to purchase a vehicle. (Complaint, ¶ 7.) He and a salesman negotiated for the sale of a 1999 Honda CRV, discussing the price of the vehicle, the amount of the down payment, and the terms of financing. Abraham then began to finalize negotiations with an agent of North Avenue named Marty. They agreed that the down payment would be $3,500 and that Abraham would purchase an extended warranty. They did not reach agreement regarding the terms of a loan, but as Abraham was about to leave, Marty told him that he could leave with the vehicle that day and that North Avenue would arrange financing. Abraham was then given a copy of a "Buyer Order." Marty asked Abraham for $50, told Abraham to bring the remainder of the down payment the next day, and said that he would look for a loan for Abraham to finance the vehicle. Abraham left with the car. When Abraham returned with the down payment, Marty informed him that he had arranged a loan for the purchase of the car and that Abraham would receive a payment book in the mail. Sometime in April, Abraham called Marty to tell him that he had not yet received a payment book, and Marty told him not to worry, the book would come soon. (Id., ¶¶ 8-12.)

Around May 5, 1999, Abraham received a letter from Bank One indicating that he was past due for four lease payments on the vehicle. Abraham informed Bank One that he had purchased, not leased, a vehicle from North Avenue. The Bank One representative

told him that North Avenue frequently had been switching people from buying to leasing and that this was a common problem, and that Abraham would have to arrange with North Avenue to change the lease. Abraham protested that he had never signed a lease, but the Bank One representative still instructed him to talk to North Avenue. Abraham alleges that North Avenue had forged his signature on a lease and sent it to Bank One. (Id., ¶ 13.)

On May 8, 1999, Abraham went to North Avenue to discuss the financing arrangement. Marty told Abraham that he would change the lease to a loan and that he would send a check to Bank One to pay off the lease. In addition, a North Avenue representative drafted a retail sales installment contract for the vehicle, which Abraham signed. (Id., ¶¶ 14, 15.)

On June 5, Abraham received another letter from Bank One that indicated he was past due on lease payments and threatened possible repossession or legal action. Abraham again informed Bank One that he had bought the vehicle and that North Avenue had told him that it would send a check to Bank One to pay off the lease. The Bank One representative told Abraham that "this Honda dealer had been doing this to a lot of people" and that North Avenue had informed Bank One that a check was in the mail but that Bank One had not yet received it. (Id., ¶¶ 16, 17.)

On June 22, Abraham received another letter from Bank One demanding payment and threatening repossession. Again, Abraham

contacted Bank One and told them that he had bought the vehicle, not leased it. Bank One responded that Abraham had to pay the charges, or the car would be repossessed. To avoid repossession, damage to his credit reputation, and the loss of use of the vehicle, Abraham paid the charges. When Abraham subsequently told Bank One that he wanted to return the vehicle to North Avenue, Bank One informed him that Bank One owned the car and that Abraham could not return it. Abraham made two more monthly payments to Bank One, but continued to request that Bank One take the vehicle back. Sometime in February 2000, Bank One repossessed the vehicle and reported adverse information on Abraham's credit report. (<u>Id.</u>, ¶¶ 18-23.)

The complaint alleges the following claims: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (Counts I and IV); (2) violation of the Truth in Lending Act, 15 U.S.C. § 1601 <u>et seq.</u> (Count II); (3) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 <u>et seq.</u> (Count III); (4) unjust enrichment (Count V); and (5) common-law fraud (Count VI). Counts I, IV, V, and VI are asserted against both North Avenue and Bank One, while Counts II and III are asserted against North Avenue only.

North Avenue moves to dismiss Counts I, II, IV, and VI of the Complaint. Bank One moves to dismiss Counts I, IV, V, and VI of the Complaint and moves to strike subparagraph 27(a) of Count I.[1]

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 294 (2d ed. 1990). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999); <u>Jang v. A.M. Miller & Assocs.</u>, 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir. 1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)); <u>Jones v. General Elec. Co.</u>, 87 F.3d 209, 211 (7th Cir.), <u>cert. denied</u>, 519 U.S. 1008 (1996).

---

[1] In plaintiff's Consolidated Response to defendants' motions, plaintiff moved to voluntarily dismiss Count IV and to amend the complaint. Bank One then requested an extension of time to file its Reply "[s]o that plaintiff may have an opportunity to file an amended complaint." On June 13, 2001, we granted Bank One's motion. We have determined that a reply from Bank One is unnecessary. Accordingly, our order of June 13 is vacated. Upon amendment of the complaint, should Bank One (or North Avenue) wish to bring another motion to dismiss, it may do so.

## A.   Count I - Violation of CFDBPA

Count I asserts a claim against both defendants based on the Illinois Consumer Fraud and Deceptive Business Practices Act (the "CFDBPA").   To state a claim under the CFDBPA, plaintiff must plead: "(1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce."  Siegel v. Levy Org. Dev. Co., 153 Ill.2d 534, 542, 607 N.E.2d 194, 198 (1992).

North Avenue and Bank One move to dismiss Count I on different grounds.   North Avenue argues that Abraham has not pled Count I with particularity, as required for fraud claims.   According to North Avenue, "[n]owhere does the Plaintiff allege with particularity who made the misrepresentations or omissions, when the misrepresentations or omissions were made, or how the misrepresentations or omissions were made."   (North Avenue Memorandum at 3-4.)  We are unpersuaded.   The complaint alleges that a man named "Marty" at North Avenue made misrepresentations to Abraham on certain specified dates, alleges the substance of the misrepresentations, and explains how the alleged conduct was deceptive.

North Avenue suggests that the allegations referring to "Marty" and other "agents" of North Avenue are not specific enough. However, where a plaintiff alleges that a corporation has committed

a tort like fraud, he is not required to identify which agents of the corporation made the allegedly fraudulent misrepresentations. See Allied Vision Group, Inc. v. RLI Vision Corp., No. 95 C 3783, 1997 WL 417394, at *6 (N.D. Ill. July 22, 1997). North Avenue also argues that plaintiff alleges no facts indicating that these individuals were in fact agents of North Avenue. But we can infer from the facts alleged— that these individuals dealt with Abraham on North Avenue's behalf when he went to North Avenue to purchase a car and on other occasions—that they were North Avenue's agents.

Bank One contends that Count I should be dismissed because plaintiff has "ratified" the lease by bringing Count IV of the complaint, which alleges that Bank One violated the CFDBPA by failing to include certain language in the lease. Bank One argues that Counts I and IV are inconsistent because Count I complains that Bank One was not entitled to enforce the lease, but Count IV is a claim based on the lease and therefore seeks to enforce the lease. This is a dubious argument for dismissal, but in any event, it is rendered moot by the fact that plaintiff seeks to voluntarily dismiss Count IV (see discussion infra).

Bank One also argues that Count I should be "stricken" to the extent that it seeks to hold Bank One liable for allegedly having ratified the lease made by Bank One's purported agent, North Avenue. See Complaint, ¶ 27(a) ("Bank One engaged in unfair and/or deceptive conduct within that trade or commerce in the following

way[]: by ratifying the fraudulent lease agreement made by its agent North Avenue Auto"). Bank One asserts that plaintiff has alleged no facts indicating that North Avenue was acting as Bank One's agent.

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike and provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, Bank One does not assert that Count I contains any redundant, immaterial, impertinent, or scandalous matter. Rather, it contends that Count I, to the extent that it relies upon Bank One's alleged ratification of the lease executed by its "agent," North Avenue, fails to state a claim upon which relief may be granted. Therefore, we treat the motion as a Rule 12(b)(6) motion to dismiss.

Ratification is part of the law of agency that refers to the adoption and confirmation by the principal or an act or contract performed or entered into by the agent. See Crowe v. Joliet Dodge, No. 00 C 8131, 2001 WL 811655, at *11 (N.D. Ill. July 18, 2001). Here, the complaint contains the mere legal conclusion, unsupported by facts, that North Avenue was the "agent" of Bank One. Plaintiff does not allege any facts that could lead the Court to conclude that North Avenue acted on either actual, implied, or inherent authority of Bank One. Without allegations of fact to support the

legal conclusion of agency, plaintiff does not state a claim based on Bank One's purported "ratification" of North Avenue's alleged fraud. See Rand Bond of N. Am., Inc. v. Saul Stone & Co., 726 F. Supp. 684, 687 (N.D. Ill. 1989) ("[A]gency is a legal relationship whose existence flows from facts. . . . [I]t remains incumbent on the pleader to allege some factual predicate . . . to create the inference contained in . . . bald 'agency' assertions."). Accordingly, Count I is dismissed to the extent that it is based on Bank One's alleged ratification of the lease agreement made by North Avenue.

## B.   Count II - Violation of TILA

Count II alleges that North Avenue violated the Truth in Lending Act ("TILA"). Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). In keeping with this purpose, TILA requires creditors to clearly make finance charge disclosures for consumer credit transactions. See 15 U.S.C. § 1638(a).

The Federal Reserve Board implemented a set of governing regulations relating to TILA, commonly known as Regulation Z. See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559-60 (1980); 12

C.F.R. § 226. These regulations mandate that credit disclosures be made clearly and conspicuously in writing and include, <u>inter alia</u>, the amount financed, the finance charge, the annual percentage rate, total of payments, and total sale price. <u>See</u> 12 C.F.R. §§ 226.17(a), 226.18(b), (d), (e), (h), (j).

North Avenue contends that plaintiff fails to allege any specific false disclosures made by North Avenue. North Avenue also argues that the retail installment contract referred to in the complaint made all the required disclosures of TILA. Plaintiff does not appear to dispute North Avenue's compliance with the form and content of the retail installment contract. Rather, plaintiff contends: "North Avenue violated the TILA because it disclosed false credit terms to Plaintiff. The terms were false because, although North Avenue represented to Plaintiff that he was subject to the terms of the Retail Installment Contract, credit was not extended on those terms." (Consolidated Response at 8.) Plaintiff also argues that TILA requires disclosures to reflect the credit actually extended to a consumer.

"It is axiomatic that in order for the creditor to be in compliance with TILA, the disclosures must be accurate." <u>Acevedo v. Bally Total Fitness Corp.</u>, No. 99 C 1289, 1999 WL 1045035, at *3 (N.D. Ill. Nov. 12, 1999). The allegations of the complaint are consistent with the implication that North Avenue did not intend for the disclosed terms of the retail installment contract to apply

to the transaction with Abraham, but instead intended for the lease to govern. We can hypothesize from the complaint that the terms disclosed pursuant to the retail installment contract were inaccurate because North Avenue never intended to extend credit to Abraham on the specified terms. Accordingly, we cannot say at this stage of the proceedings that under this set of facts, if proved, North Avenue's actions would not be a violation of TILA.

North Avenue also contends that Count I should be dismissed because it did not sign the retail installment contract and that therefore, the contract was not legally enforceable and North Avenue cannot be liable under TILA. North Avenue cites no authority for the proposition that the contract had to be "legally enforceable" in order for plaintiff to state a TILA claim.

A violation of TILA occurs when a new credit transaction is "consummated" without the requisite disclosures being made. See Nash v. First Fin. Sav. & Loan Ass'n, 703 F.2d 233, 238 (7th Cir. 1983). "Consummation" means "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). Here, Abraham has alleged that he signed the retail installment contract and became obligated; thus, he states a TILA claim.

## C.   Count IV - Violation of CFDBPA

Count IV alleges that defendants violated the CFDBPA because certain language was not included in the lease. We need not

address defendants' arguments to dismiss this claim, though, because plaintiff indicates in his response to defendants' motions that he wishes to voluntarily dismiss Count IV and amend the complaint accordingly. Plaintiff's motion to dismiss Count IV and to amend the complaint is granted.

## D. Count V - Unjust Enrichment

Count V alleges that defendants were unjustly enriched as a result of North Avenue's forgery of Abraham's signature to a lease. Bank One moves to dismiss this count on the same ground argued as to Count I--that it is "inconsistent" with Count IV. Because Count IV is dismissed, Bank One's argument is moot.

## E. Count VI - Common-Law Fraud

Count VI asserts a common-law fraud claim against both defendants. Bank One moves to dismiss Count VI based on the same "inconsistency" argument that we have found moot. North Avenue contends that Count VI should be dismissed because plaintiff fails to specify the last name of the alleged North Avenue agent "Marty" or other North Avenue agents. As explained with respect to Count I, this argument is unpersuasive.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are denied in part and granted in part. The motions are denied as to Counts V and VI. North Avenue's motion is denied as to Count II.

North Avenue's motion to dismiss Count I is denied. Bank One's motion to dismiss Count I, to the extent that Count I is premised on Bank One's purported ratification of the allegedly fraudulent lease (see subparagraph 27(a) of the Second Amended Complaint), is granted.

Pursuant to plaintiff's motion, Count IV is dismissed. Plaintiff has leave to amend the Second Amended Complaint in accordance with this memorandum opinion.

DATE:          August 23, 2001


ENTER:          _____

                John F. Grady, United States District Judge